# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

PERRY SHANE COOPER                                                  PLAINTIFF

v.                              NO. 5:11CV00332 JLH/BD

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration                                             DEFENDANT

## OPINION AND ORDER

Perry Shane Cooper has appealed the Social Security Administration Commissioner's final decision to deny Cooper's claim for disability insurance benefits. Both parties have submitted briefs, and the case is ripe for decision. For the following reasons, the Court affirms the Commissioner's decision.

On May 10, 2010, Cooper filed an application for disability insurance benefits, alleging disability of chronic asthma and constructive airway problems. *See* Tr. at 89-90. Cooper asserted that his disability began on July 2008 after a severe case of bronchitis and pneumonia from which he never recovered. *Id.* at 90. He later asserted that he had hypertension, obesity, and depression and that he experienced panic and anxiety attacks. *Id.* at 32-39. After his application was twice denied – first on September 10, 2010, and then on December 16, 2010 – Cooper requested a hearing. *Id.* at 58-59. On June 29, 2011, an Administrative Law Judge conducted a video hearing at which Cooper and a vocational expert testified. *Id.* at 10. On August 26, 2011, the ALJ issued a written decision denying Cooper's application. *Id.* at 10-19. On November 4, 2011, the Appeals Council denied Cooper's request for a review of the ALJ's decision. *Id.* at 1-5. Therefore, the ALJ's written decision is the Commissioner of Social Security's final decision in this action. *See id.* at 1.

The Court reviews the record to determine whether the Commissioner's decision is supported by substantial evidence in the record as a whole and is free of legal error. *Slusser v. Astrue*, 557 F.3d

923, 925 (8th Cir. 2009); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); *see also* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (citation omitted); *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996) (citation omitted). In its review, the Court must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it; the Court may not, however, reverse the Commissioner's decision merely because substantial evidence would have supported a different decision. *Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

In his decision, the ALJ considered Cooper's impairments by way of the required five-step sequential evaluation process. *Id.* at 10-19. The first step is to determine whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in substantial gainful activity, he will not be considered disabled, regardless of medical condition, age, education, or work experience. *Id.* § 404.1520(b). The second step is to determine whether the claimant has an impairment or combination of impairments that is "severe" and meets the duration requirement. *Id.* § 404.1520(a)(4)(ii). If not, the claimant will not be considered disabled. *Id.* A

"severe" impairment significantly limits a claimant's ability to perform basic work activities. *Id.* § 404.1520(c). The third step is to determine whether any impairments meet or equal a listed impairment. *Id.* § 404.1520(a)(4)(iii). If so, and if the duration requirement is met, the claimant will be considered disabled. *Id.* If the claimant does not meet or equal a listed impairment, then a residual functional capacity assessment is made. *Id.* § 404.1520(a)(4). This assessment determines, based on all relevant evidence in the record, what a claimant can still do in a work setting despite the claimant's limitations. *Id.* § 404.1545(a)(1). The assessment takes into account all impairments, severe or not. *Id.* § 404.1545(a)(2). The fourth step is to determine whether the claimant has sufficient residual functional capacity to perform his past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant will not be considered disabled. *Id.* The fifth step is to determine whether the claimant is able to make an adjustment to other work, given the claimant's age, education, work experience, and residual functional capacity. *Id.* § 404.1520(a)(4)(v). If so, the claimant will not be considered disabled; if not, the claimant will be considered disabled. *Id.*

At step one, the ALJ found that Cooper was not engaged in substantial gainful activity. Tr. at 12. At step two, the ALJ found that Cooper had the following severe impairments: asthma, hypertension, and obesity. *Id.* The ALJ also found, however, that Cooper's recent depression was not a severe impairment. *Id.* at 12-13. At step three, the ALJ found that Cooper does not have an impairment or combination of impairments that meets or equals a listed impairment. *Id.* at 13. At step four, the ALJ found that Cooper does not have sufficient residual functional capacity to perform his past relevant work. *Id.* at 17. At step five, however, the ALJ found that Cooper can adjust to and perform other work for which jobs exist in significant numbers in the national economy. *Id.* at 18. In so doing, the ALJ found that Cooper's statements regarding the intensity, persistence, and

limiting effects of his symptoms were not credible, to the extent that the statements were inconsistent with the state agency's residual functional capacity assessment. *Id.* at 16.

The ALJ also did not give much weight to some assessments of two of Cooper's treating physicians, Thomas Lewellen, M.O., and Robert Scott, M.D. Dr. Lewellen and Dr. Scott filled out separate pulmonary residual functional capacity questionnaires for Cooper in October 2010. Each concluded that Cooper was incapable of tolerating even "low stress" jobs. *Id.* at 251, 257. Dr. Lewellen also concluded that Cooper could walk between one and two city blocks without rest, could sit for only twenty minutes at one time before needing to get up, could sit for less than two hours in an eight-hour workday, and would likely to miss four days a month from work due to his impairments. *Id.* at 258-61. Dr. Scott concluded that Cooper could walk less than one block before needing rest, could sit for more than two hours without needing to get up, could sit for at least six hours in an eight-hour workday, and would likely to miss only one day a month from work due to his impairments. *Id.* at 252-55. The ALJ stated that the two assessments were somewhat inconsistent, that treatment notes from Dr. Scott did not exist in the record, that Dr. Lewellen had only seen Cooper on three occasions, and that another examining physician found that Cooper's conditions did not limit his ability to work. *Id.* at 17. Because the ALJ found at step five that Cooper could make an adjustment to other work, the ALJ concluded that Cooper was not disabled and could not receive disability insurance benefits. *Id.* at 19.

Cooper's sole argument on appeal is that the ALJ committed reversible error by not giving proper weight to the medical opinions of Cooper's treating sources. Some issues dispositive of a case, such as whether the applicant is disabled or unable to work, are reserved for the Commissioner and not for medical sources. 20 C.F.R. § 404.1527(d)(2). A treating physician's opinions regarding

diagnosis, symptoms, and severity of an applicant's impairment, as well as what the applicant is capable of doing, are not dispositive of the case. *See Ellis v. Barnhart*, 392 F.3d 988, 995 (8th Cir. 2005). For these non-dispositive issues, an ALJ generally gives controlling weight to a treating physician's medical opinion if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Teague v. Astrue*, 638 F.3d 611, 615 (8th Cir. 2011) (internal quotation marks omitted); 20 C.F.R. § 404.1527(c)(2). Treating physicians' opinions may be discounted, for instance, if they are inconsistent with the opinions of other physicians, "especially where those opinions are supported by more or better medical evidence." *Teague*, 638 F.3d at 615-16 ("[The treating physician] did not cite clinical test results, observations, or other objective findings as a basis for determining Teague's capabilities."); *see Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) ("The ALJ was entitled to give less weight to Dr. Harry's opinion, because it was based largely on Kirby's subjective complaints rather than on objective medical evidence."). An ALJ looks to a number of factors to determine how much weight to give to medical opinions, including the examining relationship, the treatment relationship, the length and frequency of the relationship, the amount of relevant evidence the physician uses to support the opinion, the consistency of the opinion with the record as a whole, and whether the physician is a specialist. *See* 20 C.F.R. § 404.1527(c)(1)-(6); *Duncan v. Barnhart*, 368 F.3d 820, 823-24 (8th Cir. 2004).

In this action, substantial evidence exists to support the ALJ's determination that Dr. Scott's[1] and Dr. Lewellen's opinions do not merit controlling weight.[2] First, Dr. Lewellen's and Dr. Scott's opinions are somewhat inconsistent. In Dr. Lewellen's opinion, for example, Cooper can walk between one and two city blocks without rest, can sit for only twenty minutes at one time before needing to get up, can sit for less than two hours in an eight-hour workday, and is likely to miss four days a month from work due to his impairments. Tr. at 258-61. In Dr. Scott's opinion, however, Cooper can walk less than one block before needing rest, can sit for more than two hours without needing to get up, can sit for at least six hours in an eight-hour workday, and is likely to miss only one day a month from work due to his impairments. Tr. at 252-55, 289-93.

Second, Dr. Lewellen's and Dr. Scott's opinions are inconsistent with other medical evidence in the record. Dr. David Chambers performed a physical exam on Cooper at Delta Health Services

---

[1] Cooper asserts that the ALJ disregarded Dr. Scott's pulmonary residual functional capacity questionnaire because it was signed by Dr. Scott and not Cindy O'Neal, a nurse practitioner who saw Cooper more often than did Dr. Scott when Cooper visited St. Elizabeth Health Center. *See* Tr. at 31. After the administrative hearing, Cooper had O'Neal fill out a separate pulmonary residual functional capacity questionnaire that Cooper submitted to the Appeals Council. *See* Tr. at 289-93. No evidence exists that the ALJ gave less weight to Dr. Scott's opinion than he would have if O'Neal had signed the pulmonary functional capacity questionnaire. In fact, as a nurse practitioner, O'Neal's opinions automatically would not be given controlling weight. *See Lacroix v. Barnhart*, 465 F.3d 881, 885-86 (8th Cir. 2006) (explaining that a nurse practitioner is not a "treating source" as defined in the federal regulations, and only treating sources will be given controlling weight). Cooper also acknowledges that O'Neal's conclusions were virtually unchanged from Dr. Scott's conclusions. Document #11, at 11. Thus, because substantial evidence exists to support the ALJ's decision not to give much weight to Dr. Scott's conclusions, for most of those same reasons, substantial evidence also exists not to give much weight to O'Neal's conclusions.

[2] Because substantial evidence exists to support the ALJ's determination that some of Dr. Lewellen's and Dr. Scott's opinions do not deserve much weight, the Court need not decide whether their conclusion that Cooper cannot perform even "low stress" jobs is a "medical opinion" for purposes of 20 C.F.R. § 404.1527 or instead is the type of dispositive opinion left to the Commissioner.

6

on April 14, 2010, and found Cooper capable of full participation in physical activity, with no restrictions. Tr. at 212.[3] Progress notes from St. Elizabeth's Health Center from August 25, 2009, through June 10, 2010, indicate that Cooper's blood pressure was controlled with medication. Tr. at 216-19. Ronald Davis, M.D., although not one of Cooper's treating physicians, completed a physical residual functional capacity assessment of Cooper on September 10, 2010, and found Cooper capable of working at a medium level of exertion. Tr. at 248. Similarly, Jim Takach, M.D., a medical consultant at the state agency, completed a physical residual functional capacity assessment of Cooper on December 16, 2010, and found that Cooper had mild asthma and was capable of working at a light level of exertion. Tr. at 263. A pulmonary function test on August 13, 2010, found severe lung obstruction, but the technician administering the test commented that Cooper gave a poor effort and would not blast out (i.e., blow into the device used for the test) hard or fast for any length of time. Tr. at 231. A second pulmonary function test on September 9, 2010, showed improvement in lung function, but the technician still commented that Cooper only gave a fair effort and would not blast out hard and fast. Tr. at 238. Notes from later medical examinations also state that Cooper's asthma and hypertension were controlled. Tr. at 282. These opinions reveal inconsistencies with Dr. Lewellen's and Dr. Scott's opinions regarding the severity of Cooper's impairments, as well as with their opinion that Cooper cannot handle even "low stress jobs."

---

[3] At the administrative hearing, Cooper testified that the pre-employment physical administered by Dr. Chambers was unlike any Cooper previously had gone through and that Dr. Chambers did not know what kind of physical the company expected him to give. *See* Tr. at 40. Even if Cooper's testimony was fully credible – and the ALJ found it was not, *see id.* at 17, a decision that Cooper does not contest here – this Court's function is not to decide which medical conclusion is proper, but rather to decide whether substantial evidence exists to uphold the ALJ's decision not to give controlling weight to Dr. Scott's and Dr. Lewellen's opinions.

Third, Dr. Lewellen's and Dr. Scott's opinions do not seem to be based as much on objective evidence – i.e., on diagnostic tests – as on subjective determinations of Cooper's impairments.  The conclusions Dr. Lewellen and Dr. Scott reach regarding Cooper's work capabilities come from their filling out an identical pulmonary residual functional capacity questionnaire.  *See* Tr. at 250-61.  The only diagnostic tests in the record that were requested by Dr. Lewellen were an x-ray of Cooper's chest in March 2010, which showed no evidence of congestive changes and no enlarged heart, Tr. at 199, and an echocardiogram report in April 2010 that showed concentric hypertrophy, good wall motion, normal LV function, mild mitral regurgitation, and no evidence of a mural thrombus or pericardial effusion.  *Id.* at 201.  Dr. Lewellen did not cite to or use any of these tests to explain his conclusions on the pulmonary residual functional capacity questionnaire.  Similarly, neither Dr. Scott nor nurse practitioner O'Neal cited to or used test results to explain the basis for their conclusions on the residual functional capacity questionnaires.  Further, Dr. Lewellen and Dr. Scott are primary care physicians, not asthma, lung, or heart specialists, and opinions of sources who are not specialists generally are given less weight than opinions of specialists.  *See* 20 C.F.R. § 404.1527(c)(5).

Fourth, the length and frequency of Cooper's relationships with Dr. Lewellen and with Dr. Scott support the ALJ's decision.  Dr. Lewellen was Cooper's primary care physician for about one year, *see* Tr. at 31, and had only seen Cooper three times.  *See* Tr. at 256.  Cooper stated that Dr. Lewellen was his doctor through October 2010, although records show that he first visited St. Elizabeth Health Center, where he saw nurse practitioner O'Neal or Dr. Scott, in August 2010.  *Id.* at 219.  Whether nurse practitioner O'Neal or Dr. Scott began treating Cooper in August 2010 or after October 2010, they were not in charge of Cooper's care when he filed for disability insurance

8

benefits in May 2010 and had been in charge of his care for less than one year when the administrative hearing for this action took place on June 29, 2011.

The inconsistencies between Dr. Lewellen's and Dr. Scott's opinions, the inconsistencies between their opinions and other medical evidence in the record, the lack of objective medical evidence used to form their opinions, and the length and frequency of Cooper's relationships with these medical sources makes clear that substantial evidence exists to support the ALJ's decision to give less than controlling weight to some of Dr. Scott's and Dr. Lewellen's opinions. Cooper argues, however, that even if substantial evidence supports the ALJ's decision, the ALJ committed reversible error by not applying all of the factors set forth in 20 C.F.R. § 404.1527(c).[4] Yet Cooper points to no source, including Social Security Ruling 96-2p, that states that the ALJ must recite and then apply in its opinion every factor listed in 20 C.F.R. § 404.1527(c). Instead, the issue is whether substantial evidence in the record as a whole supports the ALJ's decision. *See Perkins v. Astrue*, 648 F.3d 892, 899 (8th Cir. 2011) ("In addition to the reasons the ALJ provided, other evidence in the record supports the ALJ's decision. . . . Upon reviewing the entire record, we conclude that there is substantial evidence to support the ALJ's finding that certain opinions . . . are inconsistent with Dr. Meidi's own treatment notes and other relevant evidence."). Moreover, the ALJ *did* discuss the inconsistencies between Dr. Lewellen's and Dr. Scott's opinions, the lack of objective medical evidence to support their conclusions, and the inconsistences between their conclusions and the other

---

[4] As stated above, these factors include the examining relationship, the treatment relationship, the length and frequency of the relationship, the relevant evidence the physician uses to support the opinion, the consistency of the opinion with the record as a whole, and whether the physician is a specialist. 20 C.F.R. § 404.1527(c).

medical evidence in the record. *See* Tr. at 17. Therefore, the ALJ did not commit reversible error by not specifically stating and applying every factor in 20 C.F.R. § 404.1527(c).

It is not this Court's task to review the evidence and make an independent decision. Neither is it this Court's duty to reverse the ALJ's decision because there is evidence in the record that contradicts his findings. The test is "whether there is substantial evidence in the record as a whole" that supports the ALJ's decision. *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992). The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, and the medical and other evidence. There is ample evidence in the record as a whole that "a reasonable mind might accept as adequate to support" the ALJ's conclusion in this case. *Richardson v. Perales*, 402 U.S. at 401, 91 S. Ct. at 1427. The Commissioner's decision is not based on legal error.

THEREFORE, the Court hereby affirms the final determination of the Commissioner and dismisses Cooper's complaint with prejudice.

IT IS SO ORDERED this 26th day of October, 2012.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE